## LILES v. LILES et al., Appellants.

### Division One, July 1, 1904.

LOST CONTRACT: Contents: Character of Proof: Custodian. Where a party wishes to recover on a lost contract, the court must, as preliminary to the proof of its contents by oral testimony, be satisfied of its being lost. But that proof need not always be made by the party in whose legal custody the law puts the paper. For instance, where the contract was by the consent of all the parties to it placed in the custody of one who at the trial was dead, the proof that it was lost may be made by others besides the executor of the deceased custodian's estate.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*Martin & Woolfolk* and *Josiah Creech* for appellants.

(1) A sufficient foundation was not laid for the admission of secondary evidence of the alleged written agreement. The fact that plaintiff inquired of Guy's executor and was told that the contract was lost is not sufficient. Lewis v. Dille, 17 Mo. 64; Farrell v. Grennan, 32 Mo. 328; Carr v. Carr, 36 Mo. 408; Price v. Hunt, 59 Mo. 258. Before secondary evidence can be admitted there must be proof of such search for the original by the party who had custody of it as reason-

ably warrants the conclusion that it is either destroyed, lost or mislaid and can not be found.    Blondeau v. Sheridan, 81 Mo. 556.   If the original belonged to the custody of certain persons or is proved or may be presumed to have been in their possession they must in general be called and sworn to account for it if they are within reach of the process of the court.   If the search was made by a third person he must be called to testify respecting it.  1 Greenleaf on Evidence (Redfield Ed.), sec. 558.   If, therefore, Mayes, Guy's executor, was presumed to have the custody of the alleged contract, he should have been called to testify concerning it, as it was not shown that he was out of reach of the process of the court.    (2)  The evidence offered in support of the alleged contract does not support the allegations of the petition.   The petition charges the money evidenced by the note and secured by the deed of trust to Guy was paid to and received by the defendants and that the alleged contract was made in consideration thereof. The proof shows conclusively that not a cent was paid to defendants but that said second deed of trust was only a substitute for the original debt and took the place of the original debt.   There was, therefore, a complete failure of proof.   Railroad v. Curtis, 154 Mo. 10; Hite v. Railroad, 130 Mo. 132; Green v. Cole, 127 Mo. 587; DeBalt v. Railroad, 123 Mo. 496; Bauman v. Boeckeler, 119 Mo. 189; Commission Co. v. Bank, 116 Mo. 558; Bohn v. Railroad, 106 Mo. 429; Reid v. Botts, 100 Mo. 62.    It is not an immaterial variance which could be cured by amendment, but an entire failure of proof within the meaning of section 798, Revised Statutes 1899.   Waldhier v. Railroad, 71 Mo. 514; Raming v. Railroad, 157 Mo. 506; Chitty v. Railroad, 148 Mo. 75. (3)  The $1,120 paid by defendants on the Guy mortgage went to discharge the common debt of all, and to that extent they should be subrogated to the lien of the mortgage on all the land.   Each party to the deed of trust stood as principal for his proportionate part of

the debt, and as to him the others were sureties only. Goodall v. Wentworth, 20 Me. 320; Bank v. Leyser, 116 Mo. 76; Burnsides v. Fetzner, 63 Mo. 107; Kingman Co. v. Buggy Co., 150 Mo. 303. (4) Before plaintiff is entitled to share in the estates or interest of Arthur, Lafayette and Matilda Liles he should be compelled to contribute his proportionate part of the debts, doctor's bills and funeral expenses paid by defendants. Lanier v. Griffin, 11 S. C. 565; Schermerhorn v. Barhyat, 9 Paige 28; Taylor v. Taylor, 8 B. Monroe (Ky.) 419; 7 Am. and Eng. Ency. of Law (2 Ed.), 358; 19 Am. and Eng. Ency. of Law (2 Ed.), 1308 and 1309.

*Norton, Avery & Young* for respondent.

Both the plaintiff and Wright, who wrote the contract, testified to the existence of such contract and the plaintiff testified that the contract by agreement of all the parties was given to Guy to hold; that Guy is dead and the plaintiff inquired of Mayes, the executor of Guy, who informed him that the contract was lost. On this state of facts, the court admitted the secondary evidence and was justifiable, as we think, for two reasons: First, because when respondent showed that such a contract was in existence, which by agreement of all parties, had been left with Guy, that Guy was dead and his estate had been finally settled, we do not think it was necessary for him to go further; or, in other words, this evidence alone was sufficient for the secondary evidence as to the contents of the contract. Our court in deciding this matter declares the doctrine to be that the general rule is that if a record or paper is lost, its contents may be proved like any other document and the question of the sufficiency of the preliminary proof of loss rests largely in the discretion of the trial court. Kleimann v. Gieselmann, 114 Mo. 437; Parry v. Walser, 57 Mo. 172; State ex rel. v. Goodhue, 74 Mo. App. 162. Then the court has further declared the rule to be that the

object of the proof is merely to establish a reasonable presumption of the loss of the instrument.   Christy v. Kavanaugh, 45 Mo. 377; Henry v. Diviney, 104 Mo. 378; McConney v. Wallace, 22 Mo. App. 377.   The court certainly would have been well warranted in admitting the testimony on the proof of the execution of the instrument, that it was left with Guy, that Guy had been dead a number of years and his estate finally administered, without going further; but Liles, the plaintiff, went further and said that he applied to Mayes, the executor of Guy's estate, and Mayes went over the papers and informed him it was not there and had been lost.   This latter part of the testimony of plaintiff seems to be the ground for the chief complaint of appellant's attorney that sufficient foundation had not been laid for the admission of secondary evidence; this last statement might be treated as surplusage and still sufficient would have appeared from the testimony of Liles to have justified the court, if he credited Liles' testimony, to have invoked the rule as to the admission of this testimony, sufficient surely to have established a reasonable presumption of the loss of the instrument; but we will go further and say that without objection, even if Mayes' testimony should have been required, Liles might narrate the conversation he had with Mayes and the information he received from Mayes; and if the court will examine our additional abstract, it will find that plaintiff did not object to Liles' testimony as to his conversation with Mayes, but that his objection was that, even after his conversation with Mayes was given, there was not sufficient evidence to lay the foundation for secondary proof of the contents of the instrument.   Certainly this objection is not tenable, and, taking either view of it, the court properly admitted the proof of the contents of the instrument.   Hume v. Hopkins, 140 Mo. 65; Convent v. Kleinhoffer, 76 Mo. App. 661.

ROBINSON, J.—This is a proceeding by the plaintiff against his brothers and sisters, to have partitioned 297.5 acres of land in Lincoln county, in this State, of which his father died seized in 1883. One Annie J. Forgey, the holder and owner of a note secured by a deed of trust upon the land sought to be partitioned, is also made a party defendant.

After setting out the interest of the different parties in and to the land described, the petition proceeds: "That a deed of trust was executed to Nimrod Guy on this land, the amount thereof this plaintiff does not know, but the said deed of trust is now owned by Annie J. Forgey, the heir of Nimrod Guy, deceased. Plaintiff says that at the time of the execution of this deed of trust he signed the same, but that the money received from said Guy as a consideration for said deed of trust was received by the defendants other than Annie J. Forgey herein, and that plaintiff received no part thereof, and that at the time this plaintiff executed said deed of trust to said Nimrod Guy these defendants other than Annie J. Forgey promised in writing and a written contract was made and signed that this plaintiff should not be compelled to pay any part of the money received from Nimrod Guy and secured by said deed of trust, but defendants assumed and agreed and bound themselves to pay all of said deed of trust within five years from the time the same was executed in consideration that they should have, use and rent all the lands and of this plaintiff's interest therein without charge for that time. Plaintiff says that the five years since the execution of said deed of trust has expired and that there still remains due, as he is informed, on said deed of trust several hundred dollars, and he asks that the said deed of trust be made on the interest of defendants herein and that his interest in said lands be released entirely therefrom. Plaintiff further states that the defendants, as tenants in common with him, are now in possession of said lands and using the same and

have since the death of their mother, which occurred
about—day of March, 1898, and that this plaintiff has
received no compensation for his interest in said lands
as rent or otherwise and he asks the court to make an
accounting as to value of rents and profits.''

The prayer of the petition then is, that judgment
be entered by the court, partitioning the lands between
the plaintiff and defendants in accordance with their
interests, and that the amount the court may find to be
due the defendant Annie J. Forgey on the note and deed
of trust held by her, ''shall be made a first lien upon the
part or portion of land set off to the defendants (other
than said Annie J. Forgey), and if the same is not paid
off or discharged by them, that an order and judgment
of the court be made directing the beneficiary therein
(Annie J. Forgey), to first proceed against defendants'
interests in said land before subjecting to sale the in-
terest of this plaintiff, and for such other and further
orders and decrees as may be just and proper.''

In their answer, the defendants, except Annie J.
Forgey, denied that they had agreed with the plaintiff
that they would pay off the note and deed of trust upon
the land in controversy, on condition that plaintiff
would let defendants and their two brothers, Arthur
and Lafayette Liles, then living, have the use and enjoy-
ment of his interest in said lands for five years, free
of charge, and further they deny that they received any
special benefit on account of the making and execution
of the note and deed of trust in question, that was not
shared by the plaintiff in common with them and their
deceased brothers Arthur and Lafayette Liles.   They
also state and charge that said note and deed of trust
was made by themselves, the plaintiff and their said
brothers, Arthur and Lafayette Liles, for the purpose
of raising funds with which to pay off a balance then
due on a prior note and deed of trust on the land in
suit, made by their father Daniel W. Liles in his life-
time, and to prevent a sale of said lands and to protect

the interest of all the heirs of their father in said land. Further answering, the defendants say that on said last-named note, now held by Annie J. Forgey, they have paid in all, the sum of $1,263, and that plaintiff has failed and refused to pay any sum whatever upon or on account of said note, and that in addition to said sums so paid by them on said note, they have been compelled to pay and have paid large sums of money to discharge tax liens against said lands and to keep up the improvements thereon and to prevent its general destruction, and that plaintiff has refused to pay or to contribute any part of the money paid towards the discharge of said taxes or the improvement of said premises. Defendants also set up the fact that since the making of the note and deed of trust in question, now held by the defendant Annie J. Forgey, two of their brothers, Arthur and Lafayette Liles, who joined in its execution have died, and that each was indebted to these defendants in a sum greater than the value of his interest in the land in suit, on account of money expended by defendants in their behalf during their last sickness, in procuring medicines, paying doctor's bills and for such like services, and that said deceased brothers had no other property and left no other estate than their interest in the land in controversy, out of which their debts might be paid, and that no administration was ever taken out upon the estate of either, and that their indebtedness to defendants still remains unpaid. Defendants then conclude their answer with the prayer that plaintiff's suit abate because of the fact that the estates of their deceased brothers have never been administered, and their indebtedness to defendants have not been paid, but ask if the court should decide to proceed with the hearing of the cause, that defendants "be decreed a lien upon the land for the sums so paid by them on said encumbrances, taxes and repairs, and for such other relief as may be proper in the premises."

In plaintiff's reply the death of his two brothers,

Arthur and Lafayette Liles, is admitted to have oc-
curred since that of the father, through whom the land
in controversy is claimed, as set out and pleaded in de-
fendants' answer, but he denies that said deceased
brothers or either of them at the time of his death was
indebted to the defendants in the sum of four hundred
dollars or any other amount, or that such indebtedness
would be a valid claim against the interest held by him
in the land in question, which he has received through
his deceased brothers. Also denied that defendants had
paid in the partial discharge of the encumbrance on
said land the sum of twelve hundred and sixty-three
dollars, as pleaded in their answer, or that they had
paid out or expended on account of taxes due upon said
land or for its improvement any sum whatever.

At the trial, the court found there was yet due and
unpaid on the note and deed of trust held by the defend-
ant Annie J. Forgey, $445.25, and that at the time said
note and deed of trust was executed, a written contract
had been made and entered into by the plaintiff with the
defendants (except Annie J. Forgey), and their two
brothers, Arthur and Lafayette Liles, by the terms of
which it was agreed that, if the plaintiff would join and
also have his wife join in the execution of the note and
deed of trust, now held by Annie J. Forgey, with the
defendants and their two brothers Arthur and La-
fayette Liles now deceased, and give to defendants and
their deceased brothers the use of his interest in the
land in suit free of rent for five years, they would as-
sume the sole payment of said note and deed of trust,
and would save the plaintiff and his interest in the
land harmless from any and all liability by reason of
his signature on said note and deed of trust, and made
its decree ordering that the land be partitioned between
plaintiff and defendants according to their respective
interests as shown by the testimony. The court further
ordered that the interests of the defendants in the land
partitioned, and so much of plaintiff's interest as he

acquired through his brothers Arthur and Lafayette should be chargeable with the amount remaining due upon the Forgey note and deed of trust, and made the further order that if the defendant Annie J. Forgey should proceed by foreclosure to collect her said note, she first sell the lands chargeable by this decree with its payment before proceeding against the interest of plaintiff which he got by inheritance from his father; but made no charge upon plaintiff's interest in the said lands on account of any of defendants' claims as set up in their answer.

Without undertaking to reproduce the testimony upon which the trial court acted, or at this time to give as much as its substance, it is sufficient to say for the determination of the questions involved on this appeal, that upon the facts as presented, the decree as entered was amply justified, if the court did not commit error by the improper admission of testimony on behalf of the plaintiff, over defendants' objection, that should have been excluded.

At the hearing, before the trial court, the plaintiff was permitted to offer oral testimony as to the contents of the written agreement which he claimed had been entered into between himself and these defendants and their two deceased brothers, Arthur and Lafayette Liles, at the time the note and deed of trust now held by the defendant, Annie J. Forgey, was made and executed. In this, the appellants contend the trial court committed error, and for its action in this regard they ask this court to reverse the decree entered. By the record, as now presented to us, it is shown that after plaintiff, and a witness by the name of Wright, who wrote the contract in question, had testified to the existence of such a paper, and the plaintiff had testified that the writing, by the agreement of all the parties thereto, had been given to one Nimrod Guy to be kept and held by him for said parties until defendants had complied with its terms, and that since receiving said

contract, the said Nimrod Guy had died, and that his estate had been administered upon and settled up by his executor, one Mayes, and further that he had called upon said Mayes and asked him to produce the contract, and that said Mayes had told him that he knew nothing of it, and that said Mayes, at the request of plaintiff, had made an examination of all papers belonging to or in the custody of said Nimrod Guy that came into his hands as the executor of said estate, and was unable to find it and that said Mayes had told plaintiff that it must have been lost or destroyed as he was unable to find it, the plaintiff and the witness Wright were then permitted to testify as to the contents of the paper, as of a lost instrument.

All that is shown in the record of the testimony before us pertinent to the present inquiry, is that Mr. Martin, of counsel for defendants, at the time of the offer of the testimony of the plaintiff and the witness Wright to prove the contents of the writing evidencing the agreement between plaintiff and defendants, which was shown to be lost in the manner above indicated, made this general objection: "Sufficient effort had not been made to ascertain where the agreement now was," without specifying wherein the effort was, in his opinion, insufficient, to which objection the record shows the court made this reply: "I don't see what other diligence he would exercise; it [referring to the written agreement between the parties claimed to be lost] was given to Mr. Guy and he is dead and his papers all went into the hands of his executor; who else would plaintiff go to?" and then directed plaintiff to proceed with his testimony. Abbreviated as the record is upon this branch of the testimony, it is quite manifest that much was said and done, and that the inquiry at the trial took a far wider range than we have it here before us, and we are made to appreciate the danger of attempting to convict the trial court of error upon a record so con-

tracted as to compel the impression of its unfairness to the court.

As we are able to gather the contention of appellants as now made in their brief, it is, that Mayer, the executor of the estate of Nimrod Guy, with whom the paper between plaintiff and defendants had been originally left, was alone competent to testify as to the loss of, or the whereabouts of said paper; that no one else could do so, and that the court's action in permitting the plaintiff to testify upon that subject was error, which should result in the reversal of the decree entered herein.

There is no doubt of the general rule that the loss of, or the inability to find a written instrument, the contents of which is sought to be shown by secondary evidence, must be shown by the best evidence obtainable, before secondary evidence as to its contents will be received, but what degree of search or the exact manner of its conduct and by whom the search for the instrument must always be made, can not be determined by anyone fixed or inflexible standard. Each case presented must depend upon its own particular circumstances. When a party has in good faith presented in a reasonable degree all the sources of information accessible to him to discover the lost instrument whose contents is desired for the needs of his case, and fails to find it, the court to whom the application is made will generally receive such proof as the party has to offer, as to loss of, or his or her inability to produce the paper, and if reasonably satisfactory, may permit him or her to offer proof as to what it contained. The question of the sufficiency of the preliminary proof of loss must of necessity rest largely in the discretion of the trial court having a case before it demanding immediate disposition.

Greenleaf in his work on Evidence (16 Ed.), vol. 1, sec. 563b, states the rule: "If an instrument is lost, the party is required to give some evidence that such

a paper once existed, though light evidence is sufficient
for this purpose, and that a bona fide and diligent search
has been unsuccessfully made for it in the place where
it was most likely to be found, if the nature of the case
admits such proof," and again, in the same section he
says, "The object of the proof is merely to establish
a reasonable presumption of the loss of the instrument,
and this is a preliminary inquiry addressed to the dis-
cretion of the judge."

It will not do to assert as an arbitrary rule that no
one can testify as to the loss of, or the inability to pro-
duce the instrument whose contents is desired in proof
of some essential fact in a case, other than he who in law
is entitled to its custody or control. The party entitled
to the custody of the paper, the contents of which is
desired as testimony in a particular case, may be wholly
inaccessible to the court or beyond the reach of its pro-
cess, or for many reasons may not at the time be so
situated as that he can appear in court to testify that
the paper he was entitled to have in his custody, for
some reason had been misplaced, lost or destroyed, and
yet, because of that fact alone, the court would not be
powerless to relieve against such a situation, and should
not be denied the right to hear from others who might
know of the fact, and if satisfactory to the court, then
to hear testimony as to the contents of the paper as of
a lost instrument.

Under the rule requiring the production of the best
evidence to prove any desired fact in a case, the best evi-
dence at the time in the power of the court to procure,
may oftentimes be permitted, and if the court, in this
case, was satisfied after hearing plaintiff's testimony
that the paper containing the agreement between him-
self and his brother was lost, or could not be found for
use at the trial, after proper search was made for its
discovery, the permission of secondary evidence to
prove the contents of the paper, under the circum-

stances indicated, was certainly not such an error as calls for the reversal of a judgment that upon all the facts of the case seems just and right.

To the competency of plaintiff as a witness to prove the contents of the paper after it was shown to have been lost, no objection was made; but if his testimony in this regard should be now held improper on account of the fact of the death of his two brothers who were parties with him to said writing, this would not call for a reversal of the judgment herein, since plaintiff's testimony upon this point was but cumulative, the witness Wright having covered the same grounds.

Upon all the issues of fact tendered by appellants, the court found against them, and in our opinion no good would come of their further review and consideration here. The judgment of the trial court is therefore affirmed.    All concur.