## LILES, Respondent, v. LILES et al., Appellants.

### St. Louis Court of Appeals, January 16, 1906.

1. **PARTITION:** Attorney's Fee; Agreement: A verbal agreement, between the attorneys who filed a partition suit and their client, that they should receive a reasonable fee, to be fixed by the court, was sufficient to authorize the court to allow a fee for plaintiff's attorneys, under the statute, at a reasonable sum, to be taxed as costs.

2. ———: ———: Services in Controverted Questions: The reason for allowing a compensation to plaintiff's attorneys in a partition proceeding, to be taxed as costs against all the parties, is that the services of such attorneys are for the benefit of the defendants as well as the plaintiffs; therefore services rendered by plaintiff's attorney in such case on contested issues, in which he acts against the interest of the defendants, cannot be taxed as costs.

3. ———: ———: ———: In a partition suit, where there were contested issues concerning claims for liens against the land sought to be partitioned, presented by both plaintiff and defendants, an allowance of an attorney's fee to be taxed as costs which included services rendered on such contested issues was improper.

Appeal from Lincoln Circuit Court.—*Hon. Houston W. Johnson*, Judge.

REVERSED AND REMANDED.

*Chas. Martin* for appellants.

(1) There was no contract between the plaintiff and his attorneys as to the amount of the fee, neither was there a stipulation signed and filed authorizing the court to fix the fee. Before an attorney's fee can be allowed and taxed as cost in the case it must be shown that a contract was made between the plaintiff and his attorneys fixing the amount of the fee or a stipulation signed and filed authorizing the court to fix the fee. Draper v. Draper, 29 Mo. 13; Bank v. King, 73 Mo. 591; Westmoreland v. Martin, 24 S. C. 238. (2) Counsel fees are allowed in partition suits only when there is no contest, and where the service rendered by the attorney is beneficial to both plaintiff and defendant. McMullen v. Reynolds, 209 Ill. 504; Sturz v. Sturz, 131 Ill. 210; Dunn v. Burshire, 175 Ill. 243; Osbum v. Eslinger, 155 Ind. 251; Stempel v. Thomas, 89 Ill. 146; Bell v. Shaffer, 154 Ind. 413-424; Duncan v. Duncan, 63 Iowa 150; Swartzel v. Rogers, 3 Kan. —; Frestee v. Gellen, 26 Ky. Law 149; Lang v. Constance, 46 S. W. (Ky.) 693; Counce v. Parsons Unknown, 76 Me. 448; Swett v. Bussy, 7 Mass. 506; Symonds v. Kimball, 3 Mass. 299; Reed v. Reed, 9 Mass. 372; Hanson v. Ingwaldson, 84 Minn. 346; Potts v. Gray, 60 Miss. 57; Hoffman v. Olsen, 4 So. (Miss.) 545; Appleton v. Appleton, 140 Mo. 309; Gutick v. Huntly, 144 Mo. 241; Oliver v. Lansing, 57 Neb. 352; Coles v. Coles, 13 N. J. Eq. 365; St. Clair v. Marquell (N. J.), 67 N. E. 693; Everett v. Ciaskrey, 69 N. W. 1165; Young v. Stone, 55 Ohio St. 125; Trust C. App., 108 Pa. St. 339; Johnson v. Johnson, 53 S. W. (Tenn.) 226; Murry v. Conlon, 19 Mont. 389.

*Norton, Avery & Young* for respondent.

Under the statute as it now is and was at the time this suit was brought, the nearest construction we have of it by the courts is the case of Forsee v. McGuire, 109

Mo. App. 701, where Judge ELLISON construes section 4422, Revised Statutes 1899.

GOODE, J.—This appeal was taken from an order of the circuit court allowing a fee to the attorneys for the plaintiff. The proceeding is an action under the statute for the partition of land. The petition was filed December 21, 1900. In view of one point to be decided, it is necessary to state the issues made by the pleadings. The petition alleges that the plaintiff owns three-fifteenths of the land in controversy and the three defendants, David Liles, Daniel Liles and Robert W. Johnson, twelve-fifteenths, or four-fifteenths each; that the defendant, Anna J. Forgey, as the only legal heir of Nimrod Guy, deceased, holds a note secured by a deed of trust on all the land, on which note there is an unpaid balance; that the deed of trust to secure said note was executed by the plaintiff as well as by his three co-owners of the land; but the money received on the note was all paid to his co-owners, plaintiff receiving no part thereof; that when plaintiff executed the deed of trust to secure the note, his co-owners, David and Daniel Liles and Robert W. Johnson, gave the plaintiff a written contract that he should not be compelled to pay any part of the note but that the defendants, in consideration of the use of all the lands, including plaintiff's interest therein, free of rent for the five years during which the note was to run, would pay the whole amount of the note. The petition further states that the plaintiff is entitled to a portion of the rents on the land from and after March, 1898, when his mother died, but that his co-owners had enjoyed and retained the rents and profits since that date; that the lands are susceptible of division in kind. The prayer of the petition was that commissioners be appointed to divide the land between plaintiff and his co-owners, according to their respective interests, and that judgment for partition be entered; that plaintiff be allowed the amount found to be due him from his portion

of the rents and profits since March, 1898, and that the balance due on the note held by Anna J. Forgey and secured by a deed of trust on all the lands, be decreed to be a lien on the portion set off to the defendants, David and Daniel Liles and Robert W. Johnson, and that if said note was not discharged by said defendants, an order be entered by the court directing Anna J. Forgey, as beneficiary in the deed of trust, to proceed, first, to foreclose against the interests of said defendants before proceeding against the part set apart to plaintiff.

The answer contains first, a general denial of every allegation of the petition. For further defense, it avers that all the lands belonged to Daniel W. Liles, deceased, the father of the plaintiff, and of the defendants Daniel W. and David Liles, and grandfather of the defendant, Robert W. Johnson, that said ancestor died October 29, 1884, intestate, leaving as his heirs the plaintiff and said last named defendants, and also two other sons, Lafayette and Arthur Liles, a daughter Susan Truelove and leaving as his widow Matilda Liles; that Arthur Liles died intestate in January, 1890, leaving as his heirs, the plaintiff and the defendants, Daniel W. and David Liles and Robert W. Johnson, and his brother, Lafayette Liles, his sister, Susan Truelove, and his mother, Matilda Liles; that Lafayette Liles died intestate in March, 1898, leaving as his heirs the plaintiff, the three defendants, who are co-owners of the lands, the children of his sisters, Susan Truelove, and his mother, Matilda Liles; that Matilda Liles died in March, 1899, leaving as her heirs, the plaintiff and the defendants, who are co-owners with him and Susan Truelove's children. The answer then avers that both Arthur and Lafayette Liles, at the time of their death, were indebted to the defendants and other persons in the sum of $500, which sum represented valid and subsisting debts for which the respective interests of said deceased brothers in the lands in question were liable; that their estate had never been administered and they left no other property to pay such

debts; that Matilda Liles, at the time of her death, was largely indebted to defendants and other persons, to-wit: in the sum of $500; that she owned no other property except her interest in the lands in question and there had been no administration of her estate. The answer further states that at the death of the original ancestor, Daniel W. Liles, the lands were encumbered by mortgages and deeds of trust made by him for a large sum of money; that since his death and for the purpose of preserving the property from sale at a sacrifice, the defendants (except Anna J. Forgey) had been compelled to pay in partial discharge of said incumbrances, the sum of $1,263, and also had been compelled to pay as taxes against said lands the sum of $550; that the plaintiff has refused to pay any part of the incumbrances on the lands or the taxes; that besides the sum aforesaid, the defendants have expended in money and work on said farm, to make repairs and improvements needed to prevent the land from going to waste, the sum of $650. On account of the estate of Arthur, Lafayette and Matilda Liles not having been administered and the debts they owed not having been paid, it was averred that the partition suit should abate. But the answer prayed that, if the court entertained plaintiff's complaint and partitioned the land, it would decree a lien in favor of the defendants (except Anna J. Forgey) for the sums paid by them for taxes, incumbrances and repairs. A replication was filed admitting the averments of the answer in regard to the mode in which the title to the lands had vested in the plaintiff and his co-owners, but denying that either Arthur, Lafayette or Matilda Liles died owing the defendants, or any other person, any sum which was a valid lien against the lands in controversy; denying that the defendants had paid incumbrances on said lands made by Daniel W. Liles, the ancestor, in the sum of $1,263.00 or any other sum, or that they had been compelled to pay for taxes, $550.00 or any other sum for which they had not been remunerated out of the proceeds of the land, or

116 App—27

that they had paid $650.00 or any other sum to preserve the lands from waste. The reply then reiterates the averments of the petition in regard to the receipt of the rents and profits of the lands by plaintiff's co-owners to the exclusion of his rights, and avers that plaintiff, in order to preserve the estate of his deceased father to the heirs and keep the same from being sold for the father's debts, paid $806.00 in settlement of his father's estate; that of this money, the sum of $640.00 was borrowed from Nimrod Guy pursuant to an agreement between plaintiff and the defendant (except Anna J. Forgey) that if plaintiff would pay the balance, and would permit said defendants to occupy the land for five years without rent, defendants would pay off and discharge the incumbrance for $640.00. This is the same matter averred in the petition and the relief asked regarding it is that it be decreed a first lien on defendant's interests in the lands. The replication further prayed that if the partition suit was continued or abated, the court would appoint a receiver to hold the lands and collect the rents, pending partition among the parties according to their respective interests.

The court found the interests of the several parties to be as stated in the petition; namely, that the plaintiff owned three-fifteenths and each of the defendants (except Anna J. Forgey) four-fifteenths. In truth, this was conceded by all the parties. The court's findings as to the sources from which the several owners had derived their interest, correspond to the statements of the answer regarding that matter, which were admitted in the replication. As to the Guy or Forgey encumbrance, the court found that not only the plaintiff and his present co-owners, David and Daniel W. Liles and Robert W. Johnson, but also Lafayette and Arthur Liles, now deceased, had executed and delivered to Nimrod Guy a note for $665.00, bearing ten per cent interest and secured by a deed of trust on the lands, which was executed by all of said parties, and by their mother, Matilda

Liles, and that there was an unpaid balance on the note of $445.24 at the date of the decree. The decree further found that when the note was executed an agreement was made by which the defendants, Arthur, Lafayette and Matilda Liles, deceased, agreed to hold plaintiff and his interest in the lands harmless from any liability which might accrue against him from his signing said note and deed of trust. It was found that the lands could be divided in kind and partition was ordered. The court decreed that the Forgey note should be a first lien on the interests of the defendants, David and Daniel Liles and Robert W. Johnson, in the land, and also on that portion of plaintiff's interest therein which he had inherited from his two deceased brothers and his deceased mother, as said deceased persons had bound themselves to hold the plaintiff harmless just as the defendants (except Anna J. Forgey) had. Hence the court fixed a lien on that part of plaintiff's interest for $25.84 on account of said Forgey debt; and adjudged the balance of said debt to be a lien against the interests of his co-tenants. The court further adjudged that if Anna J. Forgey proceeded to foreclose her deed of trust, she should hold the lands set apart to the plaintiff's co-tenants for all of said debt except $25.84 before proceeding against the interest of plaintiff. The claims of the defendants (except Anna J. Forgey) to a lien on the lands on account of money owed them by their deceased brothers and mother and on account of what they alleged they had paid for taxes and to prevent waste, were not allowed. Neither was the plaintiff allowed anything on the claim preferred by him for rents collected by the defendants. This decree was approved by the Supreme Court. [Liles v. Liles, 183 Mo. 326, 81 S. W. 1101.]

After the case was returned to the circuit court, plaintiff's attorneys, the firm of Norton, Avery & Young, filed a motion praying the court to allow them a fee of $250.00 for their services. It was proved, on the hearing

of this motion, that plaintiff agreed verbally with said firm, before the suit was brought, that the court might allow a reasonable free, the amount of the fee not being stipulated. Evidence was adduced to prove that $250.00 was a reasonable fee; and the counsel for the defendants, testified that it was reasonable. Thereupon the court entered a decree finding that $250.00 was a reasonable fee and ordered it to be taxed as costs. The order recited that the fee was allowed for the services of said attorneys "in bringing and prosecuting said partition suit to a final termination; it being shown that the lands partitioned were of the value of $4,000 and that said partition suit was contested in both the circuit court of Lincoln county, Missouri, and the Supreme Court of Missouri, to which court the same was appealed by defendants." It was from that order that the present appeal was prosecuted.

1. The first proposition to be considered is the power of the court to allow an attorney's fee and tax it as costs. The power to do so is contested on the ground that plaintiff and his attorneys had no agreement for a certain fee, which is true. The extent of the agreement was that the attorneys should receive a reasonable fee, to be fixed by the court. Our statute regarding the partition of real estate provides that in any suit brought under the article, the judge of the court in which the suit is brought shall allow a reasonable fee to the attorneys bringing the suit, and may in like manner make a reasonable allowance to guardians *ad litem;* which fee and allowance shall be taxed and paid as other costs in the case. [R. S. 1899, sec. 4422.] A reading of that statute suggests no doubt as to the authority of the court to allow a reasonable fee to the attorney who instituted a partition suit, whether there was an agreement fixing the amount of the fee or not; and even if there was no agreement that the attorney should receive a fee. We think the main purpose of the statute was not to permit an agreed fee to be taxed as costs, but to prevent the rea-

sonable expense of instituting and prosecuting partition suits from falling exclusively on plaintiffs, when the results are beneficial to all the owners of the land to be partitioned.   It was to distribute this burden that the statute was enacted.   The proviso that the fee must be reasonable, was inserted to place it beyond the power of the plaintiff and his attorney to make an agreement about the fee which would oppress the other parties in interest.   The decided cases hold that the object of such legislation is as stated:  Cobs v. Cobs, 13 N. J. Eq. 365; Kilgour v. Crawford, 51 Ill. 249; Bell v. Shaffer, 154 Ind. 413, 424.   The doubt about the meaning of our statute was introduced by the decision in Draper v. Draper, 29 Mo. 13.   That decision dealt with a statute substantially like the present one except that it contained no provision for an allowance to guardian *ad litem*.   It reads as follows:  "The judge of the court before whom any case of partition is had shall allow a reasonable attorney's fee in favor of the attorney or attorneys bringing suit, which shall be taxed and collected as other costs."  [R. S. 1851, vol. 2, p. 1122, sec. 65.]   In an opinion displaying a strong repugnance to the statutory remedy of partition, and particularly to the clause authorizing the court to allow an attorney's fee,  Judge Scott held that as the statute did not contemplate that the fixing of the fee should rest primarily on the court, no fee could be taxed as costs except by consent unless it had been agreed by the parties and the attorney that the latter should receive a fee of definite amount. It was said that in the absence of such an agreement, consent of the parties was required to authorize the court to fix the fee, and that an agreement entered of record that the judge should fix it would be sufficient authority.   We do not understand the opinion to mean that consent to the court's acting in default of an agreement, could not be shown of record in any mode, except by an express record stipulation; but merely that the latter mode would be sufficient.   We would interpret the opinion to mean,

that, if it was shown by any satisfactory evidence that the parties having the right to agree with the attorney about his fee, consented to leave the matter to the court, the court might determine it. But in Lucas Bank v. King, 73 Mo. 590, the Supreme Court said the Draper case decided "that it must appear of record that the plaintiff in partition had agreed to pay the attorney a certain fee; in which event, the Judge, if he deemed the sum agreed upon reasonable might allow the same to be taxed as costs; or an agreement must be entered of record that the judge should fix the amount of the fee." The opinion in the Lucas Bank case concludes as follows: "In the case at bar an attorney's fee was allowed by the judge to be taxed as costs; but as it does not appear of record that plaintiff and the attorney bringing the suit had agreed upon any fee, and as there is no stipulation of record that the judge might fix the fee, the judgment must be reversed." In view of those two decisions of the Supreme Court, especially the second one, if there had been no alteration of the statute or later inconsistent ruling, we would be compelled to hold that as the present plaintiff and his attorney had agreed on no certain fee, and there was no stipulation of record that the judge might fix the fee, he was without power to do so. The decisions left it uncertain what parties must agree about the fee or consent to the court fixing it. The conclusion might be drawn either that the agreement or consent of all the parties who would have to bear part of the fee was essential, or that only the plaintiff need agree with the attorney or consent to action by the court. In Zelee v. Bobb, 13 Mo. App. 580, it appeared that the attorney for the plaintiff had made no agreement with his client regarding the fee prior to the institution of the partition suit, but after the report of the commissioners in partition was filed and the final decree entered, the plaintiff filed a paper in the cause subscribed by himself and of the following purport. "I hereby agree that the fee of my attorney, for services in the above entitled cause,

shall be $1,500.00." Thereupon the court heard evidence touching what would be a reasonable fee and allowed $750.00. The interest of the plaintiff in the land to be partitioned was one-twentieth part and hence he had to bear only $37.50 of the fee. It was contended on appeal that the allowance of the fee was unwarranted because there had been no agreement of any kind regarding a fee prior to the final decree. This court upheld the action of the trial court on the ground that the stipulation filed after judgment was sufficient to satisfy the requirements of the decisions in Draper v. Draper and Lucas Bank v. King, supra, which cases were said to hold simply that the court could not allow the fee unless there had been an agreement about it; but that this agreement could be made as well, or even better, after the work had been done as before. This adjudication held, in effect, that the agreement regarding the fee need not be made by all the parties in interest, but only by the plaintiff and his attorney. The trial court in Zelee v. Bobb disregarded the stipulation in respect to the amount of the fee to be paid and determined from testimoney what amount should be allowed. Hence it is difficult to see what useful purpose was subserved by the post-judgment stipulation. No agreement having been made previously, the stipulation was filed at so late an hour, in the hope of so far conforming to the rulings in the Draper and Lucas Bank cases, that the court would be enabled to obey the statute by allowing a fee without ignoring those precedents. It was accepted as a sufficient compliance with the rule, but obviously, was a compliance in semblance only. In Frank v. Crawford, 14 Mo. App. 599, it was held that to empower the court to act, the agreement with the attorney regarding the fee need not be in writing, and that nothing in the Draper and Lucas Bank decisions required a writing. The opinion says Judge Scott's remark in the Draper case that "the authority of the judge in ascertaining the amount of the fee allowed, should appear upon the face of the

record," meant on the face of the record in the appellate
court. This is equivalent to holding that if it appears,
from any competent testimony contained in the appeal
record, that the parties consented to the fixing of the fee
by the trial court, that tribunal was empowered to act.
Now, what the record in Frank v. Crawford showed, was
that the plaintiff and his attorney had verbally con-
tracted that the latter should be paid $750, and this
agreement was held sufficient to justify the circuit court
in allowing the attorney $500 on testimony showing that
sum to be reasonable. The two decisions by this court
are not reported in full and we have quoted from man-
uscript opinions on file in the office of the clerk. These
appellate decisions were cited with approval by the Su-
preme Court in Gulick v. Huntley, 144 Mo. 241, 252, 46
S. W. 154. According to the interpretation they give to
the two prior decisions of the Supreme Court, a circuit
court may allow an attorney's fee in a partition suit,
if there is either a verbal or a written agreement between
him and his client regarding the fee and fixing the
amount of it; and the court may wholly disregard the
amount so fixed and base the allowance entirely on tes-
timony as to what would be reasonable compensation.
This being the law, we see no reason why, if there was a
verbal agreement that the attorney should be paid a rea-
sonable fee to be fixed by the court, the court might not
act, though the agreement did not state the amount of
the fee. We cannot perceive why it is important for the
agreement to fix an amount, if the court may disregard
it and act on testimony. It would seem to be enough
that there was a definite understanding to pay the at-
torney for his services, and we assume that this view is
sound. It is not in accord with the doctrine of Draper v.
Draper and Lucas Bank v. King, but is according to
later decisions dealing with the statute as it now reads.
It is understood in the absence of an agreement to the
contrary, that an attorney shall be paid reasonably for
his work; hence this whole matter of expressly agreeing

that the plaintiff's attorney in a partition suit shall be paid and how much he shall be paid, as a condition essential to an allowance by the court, looks like a barren technicality and a judicial amendment of the statute. Our present statute differs from the one in force when Draper v. Draper and Lucas Bank v. King were decided, in providing that the court may allow not only a reasonable fee to the attorney bringing the suit, but, in like manner, a reasonable compensation to guardians *ad litem*. Now guardians *ad litem* represent minors who are incapable of contracting; and certainly the statute never intended that there should be an agreement between a guardian and a minor as a basis for the court to act on in allowing compensation to the guardian. But as this allowance is put on the same footing as the allowance of the attorney's fee and is to be made *in like manner*, the reasonable interpretation of the statute is that no previous agreement is necessary to authorize action by the court. In Eddie v. Eddie, 138 Mo. 599, 607, 39 S. W. 451, complaint was made of the allowance of an attorney's fee on the same day the attorney moved for it, with a further complaint against the amount allowed. The Supreme Court said the statute provided that the judge of the court should allow a reasonable fee to the attorney bringing the suit and no formal motion in the matter was necessary; that the trial court is familiar with the services rendered and presumptively knows what would be a reasonable fee. The inference from these remarks is that the fee is allowed as a matter of course, but that the defendants may be heard as to the amount. In Forsee v. McGuire, 109 Mo. App. 701, it was suggested, but not decided, that the present statute requires no agreement in order to give authority to the court to allow an attorney's fee. In that case, the plaintiff had agreed with her attorneys in writing that the court should fix his fee; the agreement, as we understand it, not undertaking to settle the amount. That is precisely the case we have before us except that here the

agreement was verbal. But we have already shown from the decisions that a verbal authority is as good as a written one. Hence, we hold that a sufficient basis in the nature of an agreement between the plaintiff and his counsel existed, to support the action of the court; and that is all we decide in disposing of this point.

2. The next proposition to be considered is the propriety of the order awarding the attorneys compensation, not only for that portion of the services they had rendered in the partition suit for the benefit of all the parties interested in the lands, the defendants as well as the plaintiff, but also for services connected with the contested issues. By reading a portion of the order recited in the opinion, it will be seen that the allowance was intended to compensate plaintiff's counsel for all their work in the case, from first to last. It is insisted that the plaintiff and his co-owners were adversary parties and there was substantial controversy between them over several questions, some of which were determined in favor of the plaintiff and others in favor of the defendant; hence, that most of the services rendered by plaintiff's attorneys were for his benefit exclusively and against the interest of the defendants, and the defendants cannot be justly called on to pay their own attorney, whom the nature of the contest compelled them to retain, and four-fifths of the fees of plaintiff's attorneys, leaving the plaintiff to pay only one-fifth. As stated before, the reason for allowing compensation to the attorneys for the plaintiff in a partition suit is that, in a majority of such cases, there is no controversy regarding the rights of the respective parties and they are not really, but only formally, adversaries. When this is true, all the services of counsel in connection with the proceeding to divide the property, redound to the benefit of the defendants as well as the plaintiff without the former being forced to employ counsel to represent them. Now, if the plaintiff in such cases were required to pay full compensation to his attorney, it would follow that

the whole expense of the partition would fall on him; the defendants reaping their share of the benefits and perhaps the larger share, without bearing any of the burden. Therefore, in such instances, it is just to distribute the attorney's fee, which is in essence, but an item of the costs, according to the several interests of the parties in the land to be divided. [Coles v. Coles and Bell v. Shaffer, supra; McMillan v. Reynolds, 209 Ill. 504.] But when the litigation is controversial and the parties are genuine adversaries contending for substantial rights, as in the present instance, the reason for apportioning the fee of the plaintiff's counsel among the parties interested, fails in so far as his right to compensation for services rendered in behalf of the plaintiff on contested issues is concerned. He is then opposing, instead of serving, the interests of the defendants and it would, be manifestly unfair to compel them to contribute toward remunerating him for that work. The decisions are quite uniform that in partition suits of a controversial character, the plaintiff must himself pay his attorney and the defendants, who were forced to hire counsel to represent their interests, will not be made to contribute. [Appeal of Fidelity, etc., Co. as Guardian, 108 Pa. St. 339, 342; Hanson v. Ingwaldson, 184 Minn. 346; McMullen v. Reynolds, 209 Ill. 504; Bell v. Shaffer, 154 Ind. 413, 424; Osborne v. Eslinger, 144 Ind. 351; Bailey v. Barclay, 22 Ky. Law Rep., 1246; Fristoe v. Gillen, 26 Ky. Law Rep., 149; Potts v. Gray, 60 Miss. 57; Oliver v. Lansing, 57 Neb. 352.] Some of the cases have held that if there is a substantial contest, no part of the fees of the plaintiff's counsel can be taxed against the defendants. It may be that the statutes construed in those cases, were not exactly like the Missouri statute, which says the court shall allow a reasonable fee to the attorney bringing suit. We entertain no doubt that the meaning of the law is that even though some controversies may arise in the case, if the demand for partition is meritorious, then for such work as is done by said at-

torney for the benefit of all parties interested, his compensation should be taxed as costs; but for work done exclusively for his own client, the latter must remunerate him. The statute was never intended to provide for an allowance that would include a fee for litigation in the true sense. This question was most thoroughly considered, perhaps, by the Supreme Court of Pennsylvania in Grubbs' Appeal, 82 Pa. St. 23. In that case, the plaintiffs had instituted a suit for the partition of lands and the result showed that they were entitled to the partition; but the defendant resisted the suit from the fear that it would result in diminishing the value of a mining right be held in the lands. This apprehension was not well founded, and the decision of the Supreme Court went against the defendant. The counsel for the petitioners were allowed a fee of $2,500.00 by a referee. In his report, the referee construed the Pennsylvania statute to authorize the allowance of a sufficient fee in favor of the attorneys for a plaintiff in any partition suit, to compensate them for litigating an issue raised by the defendant which had no merit in it. His reasoning was that otherwise, if a defendant wished to evade the statute and escape paying any part of the attorney's fee, he might raise vain issues for that purpose. The Supreme Court disapproved of the conclusion of the referee and said there was no room for doubt as to the intention of the Legislature in enacting the statute allowing fees of counsel for petitioners in partition suits, to be taxed as costs; that the services for the performance of which the statute meant to provide were searches, formal motions, the preparation of papers and conveyancing—in a word, for such professional duties as would properly enter into the bill of costs of an attorney under the English practice; that counsel fees in the ordinary sense— such as are paid to a barrister for a trial in court—were not in contemplation; that in partition proceedings, common benefit results to all the parties, and the obvious object of the statute was to enforce a contribution from

each, proportioned to his share of the common service; that each of the parties would thus pay for the aid he had received; but if counsel fees for conducting an expensive contest against him were to be allowed, he would pay for hostility and attack and not for aid; and manifestly, the statute was not designed to shoulder upon defendants in partition the expense incurred by a plaintiff in adversary litigation. Of similar import are the following cases: Snyder's Appeal, 54 Pa. St. 67; Fidelity etc. Co. App., 108 Pa. St. 339; Murray v. Conlon, 19 Mont. 389; St. Clair v. Marquell, 67 N. E. 693, 161 Ind. 56. If the attorneys who brought this suit did any work in connection with it for the benefit of all the owners of the land, reasonable compensation should be allowed for that work and taxed as costs. But it cannot be pretended that all the services for which the court allowed the fee, inured to the benefit of the defendants, who were required to pay the bulk of it. It turned out that the plaintiff was entitled to partition and therefore he was justified in instituting the suit; but the defendants appear to have asserted their demands in good faith. Plaintiff's attorneys may have rendered some services in examining the title and preparing such papers as would have been essential to an accurate division of the lands in a friendly suit. Such services benefitted the defendant owners as well as the plaintiff, and they justly may be asked to contribute toward paying for them. But the record shows plaintiff's attorneys conducted a strenuously contested litigation, exclusively in behalf of their client and against the interests of the defendants. That the merits of this litigation were not altogether on the side of the plaintiff is proved by the fact that part of the issues were determined against him. Unquestionably, the greater portion of the work which his attorneys performed, was in connection with litigated issues, and they must look to their client alone for remuneration for that work.

The judgment is reversed and the cause remanded to be reheard and disposed of in accordance with this opinion.