Edith L. MUNDAY, Plaintiff,

v.

E. V. THIELECKE, Appellant,
George H. Suelthaus and Albert D. Krueger, a Partnership, d/b/a Suelthaus & Krueger, Respondents.

Edith L. MUNDAY, Plaintiff,

v.

E. V. THIELECKE, Appellant,
Stephen A. Boggiano and Meyer H. Hessel, a Partnership, d/b/a Boggiano & Hessel, Respondents.

Nos. 44914, 44914-A.

Supreme Court of Missouri.
Division No. 1.

March 12, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied April 9, 1956.

Motion to Transfer to St. Louis Court of Appeals in No. 44914 Denied May 14, 1956.

Cobbs, Armstrong, Teasdale & Roos, Henry C. M. Lamkin and James W. Symington, St. Louis, for appellant.

George H. Suelthaus, Albert D. Krueger, St. Louis, pro se.

Boggiano & Hessel, Meyer Hessel, St. Louis, pro se.

## WESTHUES, Judge.

Plaintiff Edith L. Munday filed a suit to partition twenty-one parcels of real estate, sixteen of which were located in the City of St. Louis, three in St. Louis County, one in St. Charles County, and one parcel in St. Francois County, Missouri. Plaintiff alleged that she and E. V. Thielecke were co-owners of the property. The court decreed partition in April, 1953, in the suit which was filed in May, 1952, and ordered the property sold. A sale brought $124,053.

On December 3, 1954, the court held a hearing on the question of allowing attorneys' fees. At this hearing it was shown that the defendant Thielecke, through his attorneys Stephen A. Boggiano and Meyer H. Hessel, contested every step taken in the partition suit; that these attorneys represented Thielecke until about October 22, 1954, at which time he employed other counsel. Attorneys Boggiano and Hessel filed an application for attorneys' fees for representing Thielecke in the suit. Attorneys George H. Suelthaus and Albert D. Krueger filed an application for attorneys' fees for representing the plaintiff in the partition suit. At the conclusion of the hearing on December 3, 1954, the court allowed defendant's lawyers $20,000, to be paid out of the defendant's part of the proceeds. Thielecke appealed from that order. The court also allowed plaintiff's lawyers the sum of $20,000, to be paid out of the proceeds of the sale as a part of the costs in the case. Defendant Thielecke appealed from that order. Plaintiff Munday did not appeal.

The appeals were filed in this court and each was given a separate number. The appeal from the order allowing Boggiano and Hessel $20,000 is case No. 44914-A. The appeal from the order allowing Suelthaus and Krueger $20,000 is case No. 44914.

These appeals grew out of the same case, that is, the partition suit. The evidence in

support of the allowances in each case has a material bearing on the other. In fact, the attorneys in case No. 44914–A stipulated that the testimony of Mr. Suelthaus in case No. 44914 could be considered on appeal in case No. 44914–A. It was also stipulated that the original files in the partition suit were to be filed in this court. All of the matters were before the trial court and this court must give consideration to all the evidence in reviewing the question of whether the allowances were proper. We shall treat the cases as one appeal.

It is necessary, however, to consider each order of the court separately. We shall first dispose of the allowance to Suelthaus and Krueger to whom we shall refer as respondents while referring to Thielecke as appellant and to Edith L. Munday who filed the partition suit as plaintiff. (Case No. 44914)

■ Respondents filed a motion to dismiss the appeal stating that appellant in his brief failed to comply with the rules of this court, particularly Rule 1.08, 42 V.A.M.S., in that appellant's statement is not fair and concise and abounds in argument. It is further asserted that appellant under "Points and Authorities" has not preserved any question for review because no error on the part of the trial court is specified. We find the statements sufficient to give us a fair idea of what the controversy is about. Under "Points and Authorities" appellant has five headings:

"A. Prefatory remarks.

"B. Attorneys' fees allowable in partition. (Citing Section 528.530, RSMo.1949 [V.A.M.S.], and four cases)

"C. Attorneys' fees in receivership. (Citing Section 515.260, RSMo.1949 [V.A.M.S.], and seven cases)

"D. Attorneys' fees for services performed in this matter. (Citing one case)

"E. The constitutional questions. (Citing Art. I, Sec. 10, Mo. Constitution of 1945 [V.A.M.S.]; 5th Amendment to U. S. Constitution; and Art. I of 14th Amendment to U. S. Constitution)"

It is apparent that no question has been preserved for review unless it is point "B." This is a case requiring a review de novo and under point "B" appellant has suggested that the question involved is the proper allowance of attorneys' fees in partition cases. We, therefore, overrule the motion to dismiss and consider the sole question of whether the trial court was justified in allowing respondents a fee of $20,000 under Section 528.530 RSMo 1949, V.A.M.S. In so far as applicable to the present question, the statute provides that "The judge of the court in which any suit under this chapter may be brought shall allow a reasonable fee to the attorney or attorneys bringing the suit, * * * which fee and allowances shall be taxed and paid as other costs in the case."

■ Appellant says that the fee to be allowed in a contested partition suit under the authority of Section 528.530, supra, should not be for an amount in excess of what would be reasonable in a noncontested case. He says that a defendant contesting the case must pay his own lawyers and should not be made to pay a fee to the attorneys representing his opponent. That is the general rule. Parrish v. Treadway, 267 Mo. 91, 183 S.W. 580, loc. cit. 583(6–9); Arthaud v. McFerrin, Mo., 156 S.W.2d 641; Jennings v. Jennings, 225 Mo.App. 1010, 33 S.W.2d 165. Usually there are exceptions to rules. This partition suit was not one such as is found in the ordinary run of the mill. We say advisedly that appellant was the principal cause of making the work in this case very difficult and of making the case vexatious for the court and for the attorneys for plaintiff and appellant. The evidence is that the appellant's lawyers advised him that plaintiff, by her petition for partition, had conceded appellant's title to a one-half interest in the property and partition would be decreed. Note the evidence of Mr. Hessel: "I told him * * * all there was left for the Court to do would be to appoint a commissioner to sell the property, no matter how much we fought it, and

the best thing for him to do, if he wanted to save upwards of $25,000 would be to make a settlement and I was unable to persuade him to do that and we went ahead with the lawsuit.

"Q. Did he ever give you any authority to attempt to carry out your advice to attempt to make a settlement? A. No, he said he wouldn't settle it, he wanted a fight."

As we shall later see, the appellant meant what he said in wanting a fight. The property in St. Louis consisted of lots with buildings thereon, many of which were in a deplorable condition. Plaintiff and appellant had been at odds for a number of years. The officers of the Health Department of the City on a number of occasions had ordered plaintiff and appellant to comply with orders to remedy various situations which created health hazards. On several occasions, plaintiff and appellant were brought to police court for noncompliance with the health regulations. In order to prevent disputes with tenants over collections of rents which plaintiff as well as appellant attempted to collect, the court appointed a receiver to collect rents. Papers necessary to be inspected were kept in a safe to which plaintiff had a key and appellant had the combination. Neither could open the safe without the other. The court made an order on appellant to open the safe. Plaintiff was willing. Appellant refused and was sent to jail for contempt. He finally agreed to open the safe if the attorneys promised to replace the papers after inspection. This was done. On inspection, it was learned that certain papers were there which the receiver needed. Appellant, however, refused to open the safe after the papers had been replaced therein. To illustrate the attitude of the appellant, we relate what occurred when he did open the safe. The attorneys and others were present in the room where the safe was located and before the safe was opened, appellant locked all the doors and did not open them until all papers had been replaced in the safe. The attorneys wanted to deliver to the receiver the papers he needed but, as mentioned, appellant refused.

Therefore, a locksmith was employed to open the safe, on court order, to obtain these papers. On one occasion, a police officer was present in court for the purpose of maintaining order. Reams could be written of incidents that caused the court and all lawyers in the case unnecessary work and, we add, disagreeable work. Motions too numerous to mention here were filed. Some of these sought authority to pay taxes; others, to make repairs on buildings. Every step of the way was fought. An appeal was taken but not perfected from the order appointing a receiver. An appeal was taken from the decree in partition but was also abandoned. When the receiver's appointment was proposed, appellant's attorneys advised him to agree to take one-half of the rents. Mr. Hessel testified that he told the appellant, "the Court will appoint somebody to collect those rentals, so we would be better off to agree, you take half and let Mrs. Munday take half and each collect the rentals from your group, pending this litigation and you will save money but he didn't agree to that, he wanted to fight, and we went on and fought as best we could."

Note what occurred when the services of appellant's lawyers were terminated: The attorneys had filed a number of motions and they were to be taken up by the court on a certain day in October, 1954. Mr. Hessel testified that he notified appellant to be present to testify; that appellant when in court informed him to sit still and not say a word; that when the motions were called, the appellant asked the court for additional time to employ additional counsel; that the court refused the request. Whereupon, appellant left the courtroom. The motions were denied. Mr. Hessel then received a letter from the appellant in which he directed him to file motions for rehearing on the motions that had been denied. The concluding portion of the letter read as follows: " 'If you continue to refuse to disobey this direction and do not file this motion Monday next, which is the last day of the ten days in which to proceed with the completion of the record, you are invited as of now to withdraw immediately. E.

V. Thielecke, Defendant, Munday v. Thielecke, No. 55683–D.' "

Mr. Hessel further testified: "The parties were so hostile to each other they couldn't agree on the simplest of matters or they wouldn't. It meant that every step of the way had to be fought and argued, not only with the other side but with your own client. It just made it extremely difficult and I think I could easily say this is the most onerous task that I have ever had."

Title to a number of properties to be partitioned were in the names of straw parties. A number were under sales contracts and deeds were signed in blank. All these matters required time and labor to place the title in such condition that sales could be made after the partition decree. As above-mentioned, the partition suit was filed in May, 1952, so that for almost two and a half years the attorneys were required to devote a great deal of time to the case.

What we have related should be sufficient to show that the trial court was justified in allowing a fee to respondent-lawyers far in excess of the ordinary fees allowed in partition cases. Appellant, we say, needlessly caused a tremendous amount of time to be expended to litigate questions which his own attorneys advised him would be of no avail. Appellant wanted to fight and his wishes were carried out. The time has come to pay the fiddler. Appellant has listened to the music he ordered and should not be allowed to complain about paying the bill. A number of lawyers testified that the amount allowed was a reasonable sum to compensate plaintiff's lawyers for the work in connection with the partition suit. No contrary evidence was offered. Respondents did not ask a fee on an accounting matter between their client and appellant. The fee they asked was for the work in the partition suit.

■ The amount allowed is not unreasonable under the extraordinary circumstances of this case. We are not justified in disturbing the order. The trial court was in a better position than this court to judge the value of respondents' services. Note what this court said in Donaldson v. Allen, 213 Mo. 293, 111 S.W. 1128, loc. cit. 1129,1. (b): "Secondly, the whole record was before the court below, and the judge deciding the point presumptively knew the character of the services rendered in duration, zeal, and ability. He presumptively knew the value of them according to custom, place, and circumstance. Eddie v. Eddie, 138 Mo. [599], loc. cit. 607, 39 S.W. 451; Liles v. Liles, 116 Mo.App. [413], loc. cit. 425, 91 S.W. 983. In this view of the matter, there is room for a most violent presumption that the trial court did not err in gauging the quantum of the fee." We approve the allowance made herein.

In considering the question of the allowance to Boggiano and Hessel, we shall refer to them as respondents while referring to Thielecke as appellant and to Edith L. Munday who filed the partition suit as plaintiff. (Case No. 44914–A)

■■ Respondents here say appellant's appeal should be dismissed on the ground that the time to file a transcript in the case in the circuit court expired on September 6, 1955, and the transcript was not filed until September 14, 1955. The record disclosed the notice of appeal was filed on March 24, 1955; that on September 13, 1955, appellant filed in this court an application for extension of time to file a transcript. The transcript was filed on September 14, 1955. Under the authority of Clader v. City of Neosho, 354 Mo. 1190, 193 S.W.2d 620, loc. cit. 621(1–4), the point is ruled against respondents. The respondents also say the appeal should be dismissed because appellant failed to comply with "rule 1.08(d) of the Supreme Court" having to do with requirements in briefs on points and authorities. They should have cited Supreme Court Rule 1.08(a) (3). Perhaps this court is to blame because we have been generous in considering points not properly preserved under "Points and Authorities." The brief now before us is not unusual. Appellant has three headings under his "Points and Authorities" which are as follows:

"A. Statutory Liens and Decided Cases. (Two sections of the statutes and eleven cases are cited.)

"B. The Court Totally Lacked Jurisdiction. (Two cases are cited.)

"C. Constitutional Questions Involved. (Art. I of 14th Amendment to U. S. Constitution, 5th Amendment to U. S. Constitution, and Art. I, Sec. 10 of Mo. Constitution are cited.)"

Appellant under Points A and C has not even made a suggestion as to what error of the trial court he is complaining. We shall disregard those alleged assignments. Under B, while no specific error is assigned, nevertheless we deem the statement, "The Court Totally Lacked Jurisdiction," sufficient to raise the question of the authority of a trial court to allow fees to the attorney or attorneys representing a defendant in a partition suit. Therefore, the sole question preserved for review is whether the trial court had the authority under the law to allow respondents a fee.

■ ■ Appellant in his argument contends that under Section 528.530, supra, a trial court may allow a reasonable fee to the attorneys bringing a partition suit but that the statute does not permit a court in a partition case, on motion, to allow fees to a defendant's lawyer.

Respondents rely on Section 484.130 RS Mo 1949, V.A.M.S., as authorizing allowance of a fee to a defendant's lawyer.

We shall first take up the question of whether the allowance can be sustained under Section 528.530, supra. The general rule is that attorneys' fees cannot be allowed in the absence of statutory authority. The statute in express terms authorizes a court to allow a fee "to the attorney or attorneys bringing the suit * * *." This statute has been construed not to authorize an allowance to an attorney for a defendant in partition cases. Note what the Kansas City Court of Appeals said in Foreman v. Foreman, Mo.App., 198 S.W.2d 873, loc. cit. 874(2): "Plaintiff insists that the court erred in allowing defendants' counsel attorney's fees in the case. It is well established that attorney's fees cannot be allowed as a part of the costs in partition in the absence of statutory authority. 40 Am.Juris. pp. 80,

81, 83; Donaldson v. Allen, 213 Mo. 293, 298, 111 S.W. 1128, 127 Am.St.Rep. 601. There is no statute in this state permitting such an allowance to defendants' attorney (see section 1761, R.S.Mo.1939, Mo.R.S.A.), and the allowance cannot be upheld even were it ordered to be paid out of the gross proceeds of the sale, much less out of that part coming to plaintiff." See also Donaldson v. Allen, supra, 111 S.W. loc. cit. 1130, 1131(3). It is evident that the order allowing respondents a fee for representing appellant in the partition suit cannot be sustained on the authority of Section 528.530, supra.

■ Respondents say that the allowance was proper for the reason that they had a lien for their fee on the funds due appellant since it constituted the "proceeds of the litigation" produced by their services on behalf of the appellant. This theory is based on the provisions of Section 484.130, supra, which provides as follows: "The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

Respondents' allowance cannot be sustained under the provisions of this statute because they filed no petition or counterclaim which produced any funds for their client. No funds or property came under the jurisdiction of the court as a result of respondents' efforts. The cases cited by respondents are ones in which through the efforts of the attorney, either as a result of a petition or counterclaim, property or a fund was produced. We shall not mention all the cases cited but shall refer to a number in which the point is considered. In State ex rel. Anderson v. Roehrig, 320 Mo.

870, 8 S.W.2d 998, loc. cit. 999, the attorneys for Anderson, the plaintiff in certain cases, obtained a judgment in Anderson's favor for $28,400 which sum the defendant paid into court. The attorneys for plaintiff were claiming a fee because it was through their efforts that the sum was paid into court for the benefit of their client. The same was true in Brookshire v. Metropolitan Life Ins. Co., Mo.App., 56 S.W.2d 817, where the attorney claiming a fee had contracted for a fee to collect on an insurance contract. The defendant company had been notified of the fee contract but, nevertheless, paid the plaintiff without the knowledge of her lawyer. The case was simply a suit to enforce the attorney's lien provided for by the statute.

Respondents, in their argument in "D" under Point II, make the assertion that by the weight of authority an attorney has a lien on the "proceeds of the litigation" whether he be the attorney for plaintiff or for defendant and is entitled to have his fee paid out of the proceeds accumulated as a result of his services. A number of authorities were cited. Here again respondents overlook the fact that they did not by their efforts produce any fund for their client.

In Haynie, Parks & Westfall v. Camden Gas Corporation, 186 Ark. 842, 56 S.W.2d 419, attorneys were employed to defend an action by a gas company to enjoin the enforcement of a lower rate order. An injunction was issued pending the litigation and a refund bond given to insure refunds to consumers in case the lower rates were sustained. Through the efforts of the attorneys, the lower rate was sustained. The court held the attorneys were entitled to a lien on the fund created by the collection of excess rates. It is clear that the case is not authority for respondents in this case.

In Dyal v. Watson, 174 Ga. 330, 162 S.E. 682, attorneys were employed to defend a suit to subject land to the payment of debts. The owner of the land signed a contract to pay them a fee of $1,000. The attorneys successfully defended the suit and filed their contract in court asking that it be declared a lien on the land. The Georgia court held that through the efforts of the attorneys, the land was rescued from being sold for debts; that the attorneys had made a recovery to the extent of the debt claimed against defendant's land by the plaintiff for which a judgment was sought but was defeated by the labor of the defendant's attorneys. That case does not help respondents. They, the respondents, could have protected themselves by a written contract providing for payment of a fee to them out of the funds due appellant. This was not done and we have searched in vain for a theory upon which the allowance to them could be sustained. The allowance cannot be approved.

It follows that the allowance of $20,000 to the respondents Suelthaus and Krueger in case No. 44914 must be and is hereby affirmed, and the allowance of $20,000 to respondents Boggiano and Hessel in case No. 44914–A must be and is hereby reversed.

It is so ordered.

All concur.