**Trudy TURNER, Respondent,**

v.

**Larry PENCE, et al., Appellants.**

**WD 79661**

Missouri Court of Appeals,
Western District.

OPINION FILED: March 28, 2017

Troy L. Dietrich, Cameron, MO, for respondent.

Michael A. Insco, St. Joseph, MO, for appellants.

Before Division Three: Victor C. Howard, Presiding Judge, Gary D. Witt, Judge and Zel M. Fischer, Special Judge

Gary D. Witt, Judge

Larry Pence ("Larry") and Roland Pence ("Roland") (collectively, the "Appellants") appeal from the Amended Findings of Fact, Conclusions of Law and Interlocutory Judgment in Partition of the Circuit Court of DeKalb County ("the Judgment"). The trial court ordered that certain real estate and personal property be sold at a partition sale and, after payment of expenses, that the proceeds be divided among the parties. Appellants' claim that they were entitled to a substantially greater share of the proceeds based upon their contribution to the property based on years of work on the property. The trial court denied most of this claim. The Appellants raise five points on appeal, challenging the trial court's Judgment with respect to the denial of their claims for equitable liens against the property. We affirm.

## Factual Background

The underlying partition action in this case was filed by Respondent Trudy Turner ("Turner") in order to determine her interests in the real and personal property inherited by her and her siblings after the death of their mother Gertrude Pence ("Gertrude").[1] Turner, Larry, Roland, and Joan Tyrell ("Tyrell") are siblings and the children of Gertrude and Carl Pence ("Carl"). Carl predeceased Gertrude on March 3, 2006 without a will, and Gertrude inherited all his property. Gertrude died intestate on December 14, 2008, and Larry was appointed personal representative of her probate estate on May 19, 2009.

The real property consists of Tract I, encompassing 345 acres in DeKalb County, Missouri (the "Main Farm").[2] Tract II encompasses 160 acres in Worth County, Missouri (the "Denver Property"). Tract III encompasses 40 acres in DeKalb County, Missouri, of which Gertrude owned a one-half interest ("Grandma's Forty"). The other one-half interest in Grandma's Forty was held by the Pence siblings' cousins Hollis Gay McCauley ("McCauley") and Dee Anne Richardson ("Richardson"). Gertrude's personal property consisted of farm equipment and other equipment purchased for the operation of the farm by Gertrude's estate.

The Probate Court of DeKalb County approved the final settlement and distribution of Gertrude's probate estate on September 11, 2012. The four children were determined to be the sole heirs of Gertrude's real and personal property. They were declared equal owners of the Main Farm and the Denver Farm, and the remaining assets were ordered to be divided equally among the four children. No appeal was filed from the final judgment of the probate case. Grandma's Forty was not adjudicated in the probate case, and the trial court found in the current action, with the agreement of the parties, that Gertrude's one-half interest in the Grandma's Forty property passed to the Pence children equally.

Turner filed her Petition for Partition on April 19, 2013, which was later amended ("Petition"). The case was tried to the court without a jury. For simplification and with no objection, Larry and Roland requested that their interests be considered by the court to be the same and that the evidence presented by one would apply to the other. A number of defendants failed to answer the Petition and were

---

1. Because Carl Pence, Gertrude Pence, Larry Pence, and Roland Pence each share the same surname, we will refer to them by their first names for ease of reference. No familiarity or disrespect is intended.

2. The Main Farm had been in the family since 1860.

deemed to be in default, including Tyrell, the Federal Deposit Insurance Corporation ("FDIC"), and McCauley and Richardson.[3]

Turner, Larry, Roland, and Tyrell grew up with their parents on the Main Farm. At that time, the farm was approximately 800 acres and had a 500 head cattle operation. In the mid–1980s, the daughters Tyrell and Turner became estranged from the family. At that time, Gertrude began to have mental health problems that resulted in the estrangement of Tyrell and Turner's relationship from their parents and brothers. From the mid–1980s to the time of trial, Tyrell and Turner never went back to the farm and were not involved in any way with the farming operation.

The family's farming operation encountered financial difficulties in the mid–1980s resulting in a foreclosure that reduced the size of the farm acreage and drastically reduced the cattle operation. The farm remained in debt to the FDIC, which obtained a judgment lien on the real property in the amount of $430,173.44 on May 1, 1990. Around the same time, Carl and Gertrude separated, with Gertrude remaining in their home on the Main Farm and Carl moving into the home of Roland. Roland lived on the Main Farm in a separate house from 2007 through trial and paid no rent to his parents, Gertrude's estate, or to the co-owners after Gertrude's death. Larry was named as guardian and conservator for Gertrude in April of 2004. After Gertrude's death Larry was named as Personal Representative of her probate estate.

Sometime before 1990, Larry and Roland began to take a substantial role in helping on the Main Farm. They greatly increased the number of tillable acres, planted and harvested crops on the Main Farm, raised cattle and gave the revenue from the crops and cattle to Gertrude. There was no formal agreement or partnership with Gertrude or Carl, and Appellants never asked their parents for reimbursement for labor or services and there was no agreement to pay them for the labor or expenses they incurred. Although Larry testified that he expected he would be reimbursed in some way for his work, there was never an agreement that the land or any inheritance would be used to repay him for the services.

The expenses of the farming operation were submitted to the Probate Court during the pendency of Gertrude's guardianship/conservatorship and her subsequent decedent's estate. No claims were submitted to either estate for repairs or improvements to the land provided by Appellants.

Appellants asserted a counterclaim in the partition action seeking equitable liens for their contributions to the real property, in addition to improvements thereto, from 1990 to the time of trial. They claimed that the funds they earned for their mother through their planting, harvesting, and sale of crops and cattle went toward paying the judgement lien on the Main Farm and Denver Property held by the FDIC.[4] In addition, they offered an exhibit which itemized their claimed contributions to the farm and farm operations, including improvement to the real property. Appellants also offered expert testimony regarding the improvements to the real property

---

**3.** An additional party, defendant Lost Creek Wind, LLC was dismissed from the partition suit by stipulation of the parties.

**4.** Although in default, counsel for both parties represented to the trial court that the FDIC

represented to them they had no interest in the property. The trial court made a specific finding that the FDIC judgment lien was not valid by operation of law because it had not been timely revived.

they made, including the clearing of land into tillable acreage both before and after Gertrude's death. After Gertrude's death, Appellants cleared fifteen acres on the Main Farm and 38 acres on the Denver Property to make it tillable for crops and that enhanced the farms values by $3,000 and $19,000 respectively. Appellants claimed they should be credited contributions for their efforts from 1990 until the time of trial in the amount of $531,053.14. Turner also claimed a set-off against any lien for the reasonable rental value of the real property after she became a co-tenant on December 14, 2008, because Appellants had exercised exclusive control over the property after she became a partial owner of the property. The parties agreed that the property could not be divided in kind without great prejudice to the parties, and the trial court found that based on the nature and amount of the real property sought to be divided and the number of owners that the property should be sold and the proceeds divided between the owners.

The court determined that Appellants were not entitled to equitable liens for any contributions they made to the property prior to the death of Gertrude on December 14, 2008. The trial court found that following December 14, 2008 that Appellants were entitled to reimbursable expenditures and improvements in the total sum of $26,998.24 broken down specifically as; $3,653.74 in insurance expenditures, $1,344.50 in tax expenditures, $3,000 for the clearing and improvement on the Main Farm, and $19,000 for clearing and improvement on the Denver Property. In addition, the trial court found Turner was entitled to an off-set for 1/4th of the reasonable rental value of the property in the amount of $21,256.75. This appeal follows. Additional facts will be presented as necessary in the argument section below.

## Standard of Review

■ A partition is a court-tried action reviewed under the standard announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Felderman v. Zweifel*, 346 S.W.3d 386, 388 (Mo. App. W.D. 2011). Thus, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* The appellate court accepts all evidence and inferences therefrom in the light most favorable to the prevailing party and disregards all contrary evidence. *MC Dev. Co., LLC v. Central R-3 School Dist. of St. Francois Co.*, 299 S.W.3d 600, 602 (Mo. banc 2009). Great deference is given to the trial court's resolution of conflicts in evidence and its credibility determinations. *Id.* An appellate court should exercise the power to set aside a judgment on the ground that it is against the weight of the evidence only with caution and with a firm belief that the judgment is wrong. *Id.*

*Maskill v. Cummins*, 397 S.W.3d 27, 32–33 (Mo. App. W.D. 2013).

## Analysis

### Point One

■ In Point One on appeal, the Appellants argue the trial court erred in finding Larry and Roland "made no contribution or payment for the purchase of the Main Farm and the Denver Property, because they were entitled to full ownership or a disproportionate ownership share, in that their contributions paid off the mortgage loan due to the FDIC."

■ Unless otherwise specified in a deed, it is presumed that co-tenants possess equal ownership shares in real property. *Id.* at 33 (citing *Hoit v. Rankin*, 320 S.W.3d 761, 772 (Mo. App. W.D. 2010)).

This presumption, however, may be rebutted by evidence that the co-tenants contributed unequally toward the purchase price of the property. *Id.*

■ The Appellants' argument in this point goes far beyond their claim in their point relied on, which specifies that their claim of error is that their contributions toward paying off the judgment lien held by the FDIC entitled them to full ownership or a disproportionate ownership share in the Main Farm and Denver Property.

Rule 84.04(e) states that the argument section of the brief "shall be limited to those errors included in the 'Points Relied On.'" *See Ashworth v. City of Moberly*, 53 S.W.3d 564, 578 n.5 (Mo. App. W.D. 2001). We are not required on appeal to address arguments not made in the point relied on. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo. App. W.D. 2001). "Issues raised only in the argument portion of the brief are not preserved for review." *Boatmen's Bank of S. Mo. v. Foster*, 878 S.W.2d 506, 509 n.4 (Mo. App. S.D. 1994).

*V.M.B. v. Mo. Dental Brd.*, 74 S.W.3d 836, 839–40 (Mo. App. W.D. 2002). The Court's analysis will address only the argument properly raised in the point relied on.

The trial court found that "Larry Pence and Roland Pence made no contribution or payment for the purchase of Tracts I [the Main Farm], II [the Denver Property] or III [Grandma's Forty]." The Appellants argue that the trial court erred in making this finding, and thus finding each co-tenant had equal interests in the real property, as the evidence was that their work on the property to plant and harvest crops for Gertrude and the subsequent application of the profits therefrom to pay off the FDIC judgment lien should have been found to be a contribution to help pay off the mortgage on the property.

■ The trial court made two relevant and dispositive factual findings. First, as set forth above, the trial court found that the Appellants made no contributions toward the purchase of the Main Farm or Denver Property. Second, the trial court found that the FDIC's liens against those two properties were no longer valid "due to the passage of time and failure to revive said Judgments."[5] Appellants, who are seeking to rebut the presumption of equal ownership with a co-tenant, bore the burden before the trial court to present evidence rebutting that presumption. *See Maskill*, 397 S.W.3d at 33; *Hoit*, 320 S.W.3d at 772.

Both Larry and Roland testified that they made no payments toward the purchase price of the real property. The only evidence presented at trial that the Appellants helped pay off the FDIC's judgment liens was the testimony of the Appellants, which, as is clear considering the above findings, the trial court did not find credible. The trial court did not find that the judgment liens had been paid off but that the liens were no longer valid as the FDIC had failed to timely revive them. There were no invoices, receipts, checks, or any other documentation presented at trial that the FDIC liens were ever paid, in whole or in part, by Larry, Roland, or Gertrude. The debt owed to the FDIC was still reflected in the title histories of the Main Farm and Denver Properties as of April 2013.

The trial court's finding that the Appellants did not contribute to the purchase of the real property, and specifically that they did not contribute through paying off the judgment liens against the Main Farm

---

5. A judgment is only a lien on real property for a period of ten years unless timely and properly revived. *See* Sections 511.360–511.370.

and Denver Property, is supported by the record and not against the weight of the evidence.

Point One is denied.

### Point Two

In Point Two on appeal, the Appellants argue that the trial court erred in declaring as a matter of law that contributions made before the death of Gertrude could not be applied because they argue equitable liens are *in rem*, in that they attach to the real property.

 "An equitable lien [ ]'is a right, not recognized at law, but only in equity, which a court of equity will enforce in a proper proceeding by adjudging that a fund, or property, or the proceeds thereof, be applied in full, or in part, to the satisfaction of a particular debt or demand.'" *First Banc Real Estate, Inc. v. Johnson*, 321 S.W.3d 322, 333 (Mo. App. W.D. 2010) (quoting *Miller v. Heisler*, 187 S.W.2d 485, 491 (Mo. App. 1945)). "An equitable lien may attach to property for the purpose of securing payment of an existing obligation and is ancillary to and separate from the debt." *Id.*

> [T]he necessary requirements of an equitable lien are: (1) a duty or obligation owed by one person to another; (2) a res to which that obligation fastens and which can be identified; and (3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation.

*Id.* (internal quotation and citation omitted).

 The trial court found that the Appellants could not obtain an equitable lien for improvements from 1990 to the death of Gertrude because (1) there was no evidence there was any debt, duty, or obligation incurred by Carl, Gertrude or Gertrude's conservatorship estate to Larry or Roland for any of the repairs or improvements to the property and (2) there was no evidence of any express or implied intent that the real property would serve as a security for any debt or obligation.

The evidence at trial was that while Larry and Roland helped their parents maintain and operate the farm, there was never any agreement or understanding between the parties, formal or otherwise, that they would be compensated for that work. Larry testified at trial that he never asked for reimbursement for his services, his parents never agreed to pay for his services, and there was no agreement that the land would be used to repay him for his services. Roland also testified that he never asked his parents to reimburse him for his services. The evidence supports the trial court's finding that the Appellants are not entitled to an equitable lien as there was no evidence of a debt or duty owed by Carl, Gertrude or her estate and no evidence of either an express or implied intent that the real property would be used as security for the alleged debt or duty. Appellants have thus failed to establish the essential elements of their cause of action for an equitable lien.

Point Two is denied.

### Point Three

In Point Three on appeal, the Appellants argue that the trial court erred in finding that their contributions prior to Gertrude's death were gratuitous as it was against the weight of the evidence and not material to whether they were entitled to an equitable lien. Because we have already determined in Point Two that the Appellants were not entitled to an equitable lien, it is unnecessary to decide whether the trial court was correct in finding that the Appellants' acts were gratuitous in nature. As set forth above, however, there was evidence from

which the trial court could have reached this conclusion.

Point Three is denied.

## Point Four

■ In Point Four on appeal, the Appellants argue that the trial court erred in finding that their contributions for labor and equipment for soybean farming, custom hay farming, custom cattle farming, custom farming management, general farm maintenance, miscellaneous maintenance costs, and mileage expenses (collectively the "Contested Contribution Categories") and all other contributions as set out in Appellants' Exhibit 201 did not increase the value of the real property because such finding was against weight of evidence, in that the unrebutted evidence shows that Appellants' maintenance of the Main Farm increased its value by $205,000 and it is unreasonable to find that maintaining a farm or providing money to pay the mortgage is without value.[6]

■ "A party to a partition proceeding is entitled to reimbursement for expenditures on the property for taxes, insurance, and necessary repairs and improvements." *Tadych v. Horner*, 336 S.W.3d 174, 177 (Mo. App. W.D. 2011).

> To properly qualify for partition sale reimbursements, improvements: (1) must be made in good faith; (2) must be necessary and substantial; (3) must materially enhance the value of the property; and (4) the circumstances reveal that it would be equitable to reimburse the party. Unless a co-tenant explicitly or implicitly agrees to the improvements, they must be made for the substantial benefit of all the owners of the property,

not just the individual in possession of the property.

*Id.* at 177–78 (internal citation omitted).

The Appellants' farming expert, Greg Frankenbach, testified at trial that he determined the amounts in Appellants' Exhibit 201 ("Exhibit 201") detailing the dollar values associated with the Contested Contribution Categories. He testified that the values he attached for the custom farming categories, including "custom soybean category, custom hay, custom cattle, custom farming and management" were not increases to the property's value but only estimated operation costs. Turner's expert Kirby Morrison testified that he did not believe the Contested Contribution Categories would have added value to the land but did testify that necessary maintenance would at least serve to maintain its value. The Appellants cite evidence from their own appraiser Boyd Harris ("Harris") who testified that had the Appellants abandoned the real property on January 1, 2010, presumably using this date for ease of determining the alleged increased value to the property between Gertrude's death and trial, the value of the property would have decreased by approximately $205,000. The Appellants claim this testimony was not rebutted and constitutes substantial evidence that their efforts increased the real property value by that amount.

The trial court found that there was no substantial or credible evidence, and the Appellants failed to prove, that Larry or Roland's Contested Contribution Categories for labor and equipment for soybean farming, custom hay farming, custom cattle farming, custom farming management, general farm maintenance, miscellaneous maintenance costs, and mileage expenses increased the value of the real property. In this court-tried case, we give great defer-

---

6. The Court has already addressed the Appellants' alleged contributions regarding the mortgage and FDIC in Point One. This argument will not be addressed a second time.

ence to the trial court to make credibility determinations and accept all evidence and inferences favorable to the trial court's judgment. *Maskill*, 397 S.W.3d at 32–33. The trial court was free to disbelieve Harris's testimony, especially in light of the testimony by two other experts who testified that the claimed contribution categories and the amounts associated therewith would not have resulted in an increase in property value. The amounts provided in Exhibit 201 were only estimates of expenditures and were supported by no invoices or receipts or any other documentation. It was Larry and Roland's burden in seeking contribution to prove the expenditures increased the property's value. *See Tadych*, 336 S.W.3d at 177–78. The trial court found they failed to meet their burden. This finding is supported by substantial evidence and not against the weight of the evidence.[7]

Point Four is denied.

### Point Five

In Point Five on appeal, the Appellants argue the trial court erred in applying certain rents as an off-set against the Appellants' contributions because the rents were not chargeable against the Appellants, in that they were for property that they had improved or they did not use.

█ Where a party in possession of property as a co-tenant receives credit for expenditures made by him in maintaining and improving the property, "then the out-of-possession party would be entitled to reimbursement for [her] share of the reasonable rental value of the premises during the other party's exclusive possession." *Clark v. Dady*, 131 S.W.3d 382, 390 (Mo. App. W.D. 2004). The appropriate re-

imbursement amount is the "reasonable rental value of the premises without the improvements made by the tenant in possession." *Bass v. Rounds*, 811 S.W.2d 775, 782 (Mo. App. E.D. 1991).

█ The trial court found that the reasonable rental value to which Turner was entitled to off-set the Appellants' contributions was $21,256.75. The Appellants claim this amount does not take into account the improvements they made to the real property since 1990, and that those improvements should not be considered when determining the reasonable rental value the Appellants should have to pay. Specifically, the Appellants argue that the trial court failed to consider that the Appellants increased the tillable acreage of the land on the Main Farm from 20 acres in 1990 to 127 acres at the time of trial.

The Appellants claim that their contributions to the property prior to Gertrude's death may be considered by the trial court as contributions in determining an equitable division of the property. The Appellants' sole support for this proposition is *Hartog v. Siegler*, 615 S.W.2d 632 (Mo. App. E.D. 1981). In that case, a brother and sister, Owen Hartog ("Hartog") and Harriet Siegler ("Harriet"), acquired a piece of property and each had a one-half interest in the property. *Id.* at 634–35. Upon Harriet Siegler's death, her interest in the property was transferred into a trust for the benefit of her son Paul Siegler ("Paul") until his twenty-first birthday, at which time the trust was terminated and the interest in the property transferred to Paul. *Id.* at 635. Prior to her death, Harriet and Hartog had agreed to certain improvements on the property,

---

7. In addition, the vast majority of the expenses associated with the Contested Contribution Categories were incurred prior to the death of Gertrude and the resulting creation of the tenancy in common with Turner. As explained in Point Five, the Appellants are not entitled to contribution costs incurred prior to the creation of the tenancy in common.

which Hartog performed and continued to perform after her death and during the life of the trust. *Id.* In the partition action, Hartog sought reimbursement for the contributions he made before and after his sister's death. Paul argued that expenditures made prior to his mother's death and during the probate of her estate were actually claims against his mother's estate and barred by the statute limiting the time for which claims may be made against a decedent's estate. *Id.* at 638. The trial court found that the statute did not preclude Hartog from seeking reimbursement for contributions he made prior to the death of his sister. *Id.*

*Hartog* does not support the Appellants' position at bar. In *Hartog*, all the expenditures made by Hartog, for which he was seeking reimbursement, were made during the existence of the co-tenancy with his sister; Hartog made the expenditures as a co-tenant. Harriet's one-half interest in the property transferred to her son, who inherited the rights of his mother in the property subject to the equitable claims by Hartog against the property *in rem*. In the case at bar, the Appellants seek reimbursement for contributions made *prior to the existence of the co-tenancy*. The Appellants seek credit for contributions made during a time in which neither they nor Turner had any interest in the property. As admitted by the Appellants at trial,

when they made these contributions they did so without any expectation of remuneration. *Hartog* does not support their claim here. Appellants have cited no authority to support their proposition that they are entitled to reimbursement for contributions made prior to, and in some cases over a decade before the existence of, the co-tenancy.

▆ To the contrary, a co-tenant can only seek contributions for expenses paid for repair, improvements, taxes, etc. after the tenancy in common is established. *See Grunden v. Nelson*, 793 S.W.2d 569, 575–76 (Mo. App. S.D. 1990) (contributions made prior to the conversion of property to a tenancy in common are not germane). This principle, although usually unstated, is supported by the fact that only contributions made for the benefit of all co-tenants may be allowed. *See Hartog*, 615 S.W.2d at 636 ("Upon partition, advances for repairs made in good faith for the substantial benefit of all co-tenants, may be allowed.") Contributions made prior to the existence of a co-tenancy cannot be for the benefit of a future co-tenant.[8] The Appellants do not argue that the rent calculation applied by the trial court failed to appropriately account for improvements made after the creation of the co-tenancy.[9]

The trial court did not err by refusing to take into account contributions and im-

---

8. We do not reach the limited issue of whether contributions made immediately prior to the co-tenancy, which were performed or paid in anticipation of the known creation of the co-tenancy for the benefit of the co-tenancy may be recoverable, as that issue is not before us.

9. The Appellants include a final argument in their brief that claims there is no substantial evidence that Larry and Roland Pence hunted upon the Main Farm and that they should not be charged rent for this item. Appellants fail to cite any authority to support their claim that the inclusion of the value of hunting

leases on the property in the reasonable rental value was improper. This Court will not serve as an advocate for the Appellants and create legal arguments on their behalf. Turner provided expert testimony regarding the reasonable rental value of the property, and their expert opined that it was reasonable to factor into the calculation the ability to lease the property for hunting. *Ex gratia,* the Court has found no authority that only the Appellants' actual use of the property establishes the parameters for the property's reasonable rental value.

provements prior to the death of Gertrude and the creation of the co-tenancy when setting the reasonable rental value of the property.

Point Five is denied.

### Motion for Attorney's Fees

■ Finally, Turner has filed a Motion for Attorney Fees on Appeal seeking reimbursement for attorney fees incurred in prosecuting the instant appeal. Both section 528.530 [10] and Rule 96.30 [11] provide for a "reasonable fee to the attorney instituting the action in partition." Pursuant to these provisions, the trial court found that Turner had incurred reasonable attorney fees in the amount of $48,387.15 but declined to make any determination prior to the completion of the partition sale as to what fees should be taxed as costs and reimbursed out of the sale. Turner now seeks additional attorney fee reimbursement for costs associated with her appeal.

■ "Both section 528.530 and Rule 96.30 are predicated on the theory that the attorney who instituted the partition action acts on behalf of *both* parties." *Tadych,* 336 S.W.3d at 179–80 (citing *Higgins v. Olson,* 991 S.W.2d 216, 219 (Mo. App. E.D. 1999)).

Because both parties benefit from the work of the attorney who handles the partition case (i.e. both receive partition sale proceeds), the defendant "should not be permitted to escape the common burden, and throw upon the plaintiff the whole of it." *Arthaud v. McFerrin,* 156 S.W.2d 641, 642 (Mo.1941) (internal citations and quotations omitted). These fees are typically limited to "such work as would be required in an uncontested suit." *Id.* An exception to this rule exists where the defendant is uncooperative and unduly litigious in his opposition to the partition action. *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. banc 1980); *Munday v. Thielecke,* 290 S.W.2d 88, 90–91 (Mo.1956).

*Id.* at 180.

Turner has failed to argue how the Appellants' conduct in this litigation was uncooperative or unduly litigious and we refuse to act as an advocate for her and create such an argument on her behalf. The Appellants' position in this litigation was not that Turner had no interest in the real and personal property but rather that their work on behalf of their parents should qualify as contributions for which they should be reimbursed. The fact that the Appellants have not succeeded in the appeal does not make it vexatious. *See id.* "In the absence of vexatious action on the part of the defendant 'the amount of those fees will be determined by the amount of work the attorney conducted towards the partition for the benefit of *both* parties.'" *Id.* (quoting *Cooper v. Murphy,* 276 S.W.3d 380, 385 (Mo. App. E.D. 2009) (emphasis added)). Work that benefits both parties includes "preparing the court's orders, assisting the sheriff or special commissioner to prepare the notices, advertising the sale, ensuring potential buyers for the sale, preparing the deeds and other documents after the sale, and disbursing the proceeds of the sale." *Ward v. Ward,* 640 S.W.2d 477, 479 (Mo. App. E.D. 1982).

Turner has failed to show either that the Appellants' actions in this appeal were vexatious or that the work of her attorney on appeal has benefited the Appellants in any way. Therefore, Turner's request for attorney fees on appeal is denied.

---

**10.** All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

**11.** All rule references are to Missouri Supreme Court Rules (2016), unless otherwise indicated.

## Conclusion

The judgment of the circuit court is affirmed.

All concur